

**ORDERED in the Southern District of Florida on January 28, 2019.**

**Mindy A. Mora, Judge**
**United States Bankruptcy Court**

---

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### West Palm Beach Division
### www.flsb.uscourts.gov

In re:

GMOFORIS CORPORATION

    Debtor.

_____/

GMOFORIS CORPORATION,

    Plaintiff,

       v.

SOUTH FLORIDA COMMERCIAL
PROPERTIES OF GEORGIA, LLC
d/b/a SOUTH FLORIDA
COMMERCIAL PROPERTIES, LLC,

    Defendant.

_____/

SOUTH FLORIDA COMMERCIAL
PROPERTIES, LLC,

Case No. 18-20875-MAM
Chapter 11

Adv. Proc. No. 18-01363-MAM
*Lead Proceeding (consolidated
with Adv. Proc. No. 18-01380 for
discovery and trial purposes)*

Adv. Proc. No. 18-01380-MAM

**Plaintiff,**                          ***(consolidated with Adv. Proc. No.
                                         18-01363 for discovery and trial
       **v.**                            purposes)***

**GMOFORIS CORPORATION,**

       **Defendant.**

_____/

### MEMORANDUM OPINION AND ORDER DETERMINING THAT DEBTOR'S LEASE WAS TERMINATED PRE-PETITION AND FINDING THAT LANDLORD IS ENTITLED TO JUDGMENT OF EVICTION

**THIS MATTER** came before the court for an evidentiary hearing on November 29, 2018 at 10:00 a.m. (the "Hearing") pursuant to the *Amended Omnibus Order (I) Granting in Part and Denying in Part Motion to Set Evidentiary Hearing (ECF No. 9), (II) Granting Emergency Motion to Continue Hearing (ECF No. 15), (III) Setting Pre-Hearing Requirements, and (IV) Directing Payment of Administrative Rent* (ECF No. 31) (the "Omnibus Order"). The parties to this litigation are (i) GMORFORIS Corporation ("GMOFORIS"), the debtor in possession in the above-captioned bankruptcy case (Case No. 18-20875-MAM) (the "Bankruptcy Case") and plaintiff in Adv. Proc. No. 18-01363 (the "Lead Proceeding"), and (ii) South Florida Commercial Properties, LLC ("SFCP"), the defendant in the Lead Proceeding. Each party appeared through counsel at the Hearing on the issues outlined in the Omnibus Order and presented witnesses, exhibits, and argument.

## I.    PROCEDURAL BACKGROUND

On September 4, 2018, GMOFORIS filed for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date"). Prior to the Petition Date, GMOFORIS and SFCP were involved in two separate actions pending in the Fifteenth Judicial Circuit

in and for Palm Beach County, Florida (the "<u>State Court</u>"). Specifically, GMOFORIS filed a lawsuit styled as *GMOFORIS Corporation v. South Florida Commercial Properties of Georgia, LLC,* Case No. 50-2018 CA 006842XXXXMB (the "<u>Declaratory Relief Action</u>"). SFCP filed an action to evict GMOFORIS from the subject property styled as *South Florida Commercial Properties, LLC v. GMOFORIS Corp.*, Case No. 50-2018 CA 008552XXXXMB (the "<u>Eviction Action</u>").

GMOFORIS removed the Declaratory Relief Action to this court.[1] SFCP then also removed the Eviction Action to this court.[2] The court *sua sponte* ordered the consolidation of the Declaratory Relief Action and Eviction Action for discovery and trial.[3] At a hearing on October 18, 2018, counsel to GMOFORIS and counsel to SFCP each expressly consented to this court's entry of final orders and judgment upon all matters before the court in both the Declaratory Relief Action and the Eviction Action.[4]

Pursuant to the Omnibus Order, the court scheduled the Hearing to consider Counts I and II set forth in the *Complaint for Damages, and Other Equitable Relief.*[5] Specifically, the court considered: (a) Counts I and II set forth in the Complaint for Damages, and Other Equitable Relief (ECF No. 6-2 in Adv. Proc. No. 18-01363), i.e., whether as of the Petition Date, the lease under which GMOFORIS occupies its

---

[1] ECF No. 5-6 in Adv. Proc. 18-01363.

[2] ECF No. 1 in Adv. Proc. 18-01380.

[3] ECF No. 5 in Adv. Proc. 18-01380.

[4] ECF No. 31 in Adv. Proc. No. 18-01363, at p. 4.

[5] ECF No. 6-2 in Adv. Proc. No. 18-01363.

premises was still in effect, and capable of being assumed or rejected by GMOFORIS as an unexpired lease pursuant to 11 U.S.C. §365, or whether SFCP effectively terminated the lease of GMOFORIS's premises pre-petition under applicable non-bankruptcy law, and (b) Count I set forth in the Complaint for Eviction (ECF No. 4-4 in Adv. Proc. No. 18-01363), i.e., whether SFCP is entitled to a judgment of eviction under applicable non-bankruptcy law.

At the Hearing, the court invited the parties to submit proposed findings of fact and conclusions of law by December 21, 2018. After review of the parties' submissions, all witness testimony, the complete record of the Bankruptcy Case and all related proceedings, all relevant exhibits admitted into evidence at the Hearing, legal argument by counsel for the parties, and applicable law, the court concludes that GMOFORIS's convenience store lease was effectively terminated by SFCP pre-petition. Accordingly, the court concludes that SFCP is entitled to a judgment of eviction.

## II.    **FINDINGS OF FACT**

SFCP owns real property located at 7533 West Atlantic Avenue, Delray Beach, Florida (the "Property") improved by the addition of gas station and convenience store (the "Convenience Store").[6] Majors Management LLC ("Majors") oversees the

---

[6] Def. Exh. CCC at ¶5.

management of the Property.[7]

In June 2013, Majors authorized Miami Commercial Properties, LLC ("Miami Commercial") to manage the Property on its behalf.[8] On or about the same time, Miami Commercial entered into an Operation and Management Agreement ("Management Agreement") with Ali Jaferi ("Jaferi"), Frank Gutta ("Gutta"), and Gas Consultants of Florida, LLC (Gas Consultants).[9] Gas Consultants, Jaferi, and Gutta later assigned (with Miami Commercial's consent) the Management Agreement to Jaferi, Gutta, The Durban Group, LLC, and Boca Gas Co., Inc.[10]

On or about March 12, 2015, SFCP entered into a lease with Mart Petroleum 403, LLC ("Mart Petroleum") for the operation and possession of the Convenience Store.[11] Ali Jaferi and Frank Gutta are the principals of Mart Petroleum.[12]

In or around March 2015, Mart Petroleum and GMOFORIS entered into a Store Operator Agreement, a Motor Fuel Agreement, and Addendum for GMOFORIS's use and possession of the Property (collectively, the "Sublease").[13] Stavros Moforis and George Moforis handled the Sublease negotiations with Ali Jaferi, Frank Gutta and, possibly, Ali Jaferi's son, all of whom were purportedly

---

[7] Id.

[8] Id. at ¶6.

[9] Id. at ¶7.

[10] Id. The assignment resulted in the replacement of an interest previously held by Gas Consultants with new interests held by The Durban Group, LLC and Boca Gas Co., Inc. Jaferi and Gutta each retained their prior interest(s).

[11] Def. Exh. CCC at ¶8.

[12] Def. Exh. CCC at ¶9.

[13] Transcript from November 29, 2018 Evidentiary Hearing ("Transcript") at 28:5-8, 60:9-19; Plaint. Exh. 1-3.

acting on behalf of Mart Petroleum.[14] SFCP was not involved with the Sublease negotiations or performance thereunder.[15]

In May 2016, Miami Commercial terminated the Management Agreement with Ali Jaferi, Frank Gutta, and their entities.[16] The termination of the Management Agreement resulted in SFCP filing an eviction lawsuit against Mart Petroleum for possession of the Property.[17]

On or about September 1, 2016, Mart Petroleum and certain other entities owned and controlled by Ali Jaferi and Frank Gutta filed for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court, Southern District of Florida (West Palm Beach division). The bankruptcy cases for Mart Petroleum and the other entities owned and controlled by Mr. Jaferi and Mr. Gutta were jointly administered in the bankruptcy case of Gas Consultants (Case No. 16-22198-EPK) ("Mart Petroleum's Bankruptcy Case").[18]

GMOFORIS and its counsel were aware of and participated in Mart Petroleum's Bankruptcy Case, as evidenced by a notice of appearance and request for service filed by GMOFORIS's counsel on its behalf, as well as a response in opposition to a motion to voluntarily dismiss, and a notice of an examination *duces tecum*

---

[14] Transcript at 60:20-61:7.

[15] Def. Exh. CCC at ¶11.

[16] Def. Exh. CCC at ¶10.

[17] Id. at ¶12.

[18] Def. Exh. MM, ZZ, and AAA.

pursuant to Bankruptcy Rule 2004.[19] Further, GMOFORIS filed a proof of claim in the Mart Petroleum Bankruptcy Case.[20]

In November 2016, SFCP, Mart Petroleum, and their related entities resolved the issues they were litigating in Mart Petroleum's Bankruptcy Case pursuant to a written settlement agreement (the "Settlement Agreement").[21] As part of the Settlement Agreement, Mart Petroleum, among other things, released all interests in and to the Property, including its lease with SFCP of the Property.[22]

On November 22, 2016, this court (with Judge Kimball presiding) entered an order (ECF No. 181) in Mart Petroleum's Bankruptcy Case granting Mart Petroleum's motion to reject the lease agreements between SFCP and Mart Petroleum relating to the Property, as well as Mart Petroleum's Sublease with GMOFORIS, effective as of November 16, 2016.[23]

On December 19, 2016, the court entered an order in Mart Petroleum's Bankruptcy Case approving the Settlement Agreement.[24]

Also in December 2016, Clint Dixon, the Director of Real Estate for Majors at the time, and Stavros Moforis, the manager of GMOFORIS, met in person at Majors

---

[19] Def. Exh. NN, RR, WW, XX, ZZ, and AAA.

[20] Claim No. 2 in Case No. 16-22563. GMOFORIS's counsel in the Lead Proceeding also represented GMOFORIS in the Mart Petroleum Bankruptcy Case.

[21] Def. Exh. QQ, and TT.

[22] Def. Exh. QQ.

[23] Def. Exh. SS.

[24] Def. Exh. UU.

Management's office in Lawrenceville, Georgia to discuss a potential lease for the Property between GMOFORIS and SFCP.[25]

GMOFORIS requested a long-term lease for the Property, but SFCP was only willing to consider a month-to-month agreement with GMOFORIS.[26] At the parties' in-person meeting, Mr. Dixon prepared and signed a document titled "C-Store Lease Worksheet", and handwrote the month-to-month term and monthly rent amount, as well as certain other terms of a proposed lease.[27] After Mr. Dixon wrote and signed the "C-Store Lease Worksheet", Mr. Dixon provided the document to Stavros Moforis for review and signature on behalf of GMOFORIS.[28]

Stavros Moforis presented the "C-Store Lease Worksheet" to his father, George Moforis, who is the sole shareholder of GMOFORIS. Either Stavros or George Moforis made some handwritten additions to the C-Store Lease Worksheet that had not been on the version prepared by Mr. Dixon, and George Moforis signed the modified document on behalf of GMOFORIS. On January 17, 2018 Stavros Moforis emailed the modified and signed document to Mr. Dixon.[29]

After Stavros Moforis emailed the Worksheet to Mr. Dixon, GMOFORIS began paying rent to SFCP by wire transfer on a monthly basis.[30] Prior to executing the

---

[25] Def. Exh. BBB at ¶¶2, 5; Transcript at 64:17-22, 65:10-17.

[26] Def. Exh. BBB at ¶5; Transcript at 65:19-25.

[27] Def. Exh. BBB at ¶6; Def. Exh. A.

[28] Id. at ¶7.

[29] The counter-signed C-Store Lease Worksheet is referred to as the "Worksheet". *See* Def. Exh. BBB at ¶7, Def. Exh. T; Transcript at 24:23-25:1, 66:12-14.

[30] Def. Exh. CCC at ¶21.

Worksheet, SFCP had never received any payments (rent or otherwise) from GMOFORIS.[31]

Following Mr. Dixon's receipt of the Worksheet from Stavros Moforis on January 17, 2018, GMOFORIS began communicating with SFCP about items relating to its use and occupancy of the Property.[32]

By letter dated May 18, 2018 (the "Notice"), SFCP notified GMOFORIS that it was electing to terminate GMOFORIS's month to month tenancy of the Property effective June 2, 2018, pursuant to Fla. Stat. § 83.57, and directed GMOFORIS to vacate the Property by June 2, 2018 and deliver possession of the Property to SFCP.[33]

GMOFORIS did not vacate the Property by the date requested and remained in possession as of the date of the Hearing.[34] Following GMOFORIS's receipt of the Notice, it ceased paying rent to SFCP. Accordingly, the last rent payment SFCP received from GMOFORIS for the Property was April 30, 2018.[35]

GMOFORIS filed its chapter 11 petition approximately five months later, in September 2018, and now wishes to enforce the Sublease against SFCP and continue in possession of the Property.[36] GMOFORIS's primary basis for claiming that the Sublease is both in effect and enforceable against SFCP is GMOFORIS's contention that Ali Jaferi represented to GMOFORIS in March 2015 that Jaferi was the leasing

---

[31] *Id.*

[32] Def. Exh. BBB at ¶8; Transcript at 167:6-22.

[33] Transcript at 138:22-139:22; Def. Exh. II.

[34] Transcript at 140:7-10.

[35] Def. Exh. KK.

[36] Transcript at 180:18-24.

agent for Marvin Hewatt, the owner of both SFCP and Miami Commercial.[37] In addition, Stavros Moforis testified that one time in May 2015, GMFORIS paid Miami Commercial directly, rather than through Mart Petroleum, the sum of $1,082.54 in respect of gas moneys collected at the store and due under the Sublease, which GMOFORIS argues demonstrates that SFCP knew or should have known that GMOFORIS was the tenant at the Property as early as May 2015. [38]Finally, Robert Kilgore, Marvin Hewatt's uncle, visited the Property five or six times starting in early 2015 to check on the stock at the Convenience Store operated by GMOFORIS. [39]

## III.    CONCLUSIONS OF LAW

### A. Neither the Sublease nor the Worksheet is the Operative Lease.

In order to determine the possessory rights, if any, of GMOFORIS in the Property as of the Petition Date, the court must first determine whether GMOFORIS had an unexpired lease for the Property as of that date. That analysis necessarily includes consideration of whether the operative lease for the Property was terminated pre-petition.

SFCP contends that GMOFORIS's possession arises from the Worksheet, which SFCP asserts gave rise to a binding month to month lease between the parties, and that the Worksheet was terminated pre-petition. GMOFORIS contends that GMOFORIS's possession arises from the Sublease and that the Sublease was not terminated pre-petition. Based upon the evidence presented to the court, as well as

---

[37] Transcript at 29:17-30-2, 32:9-18, 81:2-15.

[38] Transcript at 40:2-25.

[39] Transcript at 46:8-47:15.

an analysis of applicable law, the court finds that neither the Sublease nor the Worksheet is the operative lease, and instead SFCP and GMOFORIS merely entered into an oral month to month lease for the Property.

GMOFORIS's argument that its right to occupy the Property arises from the Sublease is predicated on this court making a finding that Ali Jaferi was the agent for SFCP. SFCP denies that Ali Jaferi or Mart Petroleum acted as SFCP's agent, and the evidence at trial does not reflect the existence of any agency relationship. *See Roessler v. Novak,* 858 So.2d 1158, 1161-62 (Fla. 2nd DCA 2003) ("An apparent agency exists only if all three of the following elements are present: (a) a representation by the purported principal; (b) a reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the representation."); *Goldschmidt v. Holman,* 571 So.2d 422, 424 n.5 (Fla. 1990) (stating actual agency requires (i) acknowledgement by the alleged principal that the agent will act for him, (ii) the agent's acceptance of the undertaking, and (iii) control by the alleged principal over the actions of the agent).

The only testimony regarding "agency" is (i) Stavros Moforis's testimony that Ali Jaferi, held himself out as SFCP's purported agent[40] and (ii) Ali Jaferi's testimony in which he referred to himself as "the manager" for one of Mr. Hewatt's companies, not its "leasing agent".[41] There is no evidence, however, that the purported principal, SFCP, made any representation that would support an agency relationship between

---

[40] Transcript 29:17-30:2, 32:9-23.

[41] Transcript at 84:25-85:4.

it and Mart Petroleum.[42] There is no evidence of any direct contact between SFCP or its principal, Marvin Hewatt, and GMOFORIS until *after* the Sublease was rejected in Mart Petroleum's Bankruptcy Case, and GMOFORIS and SFCP began negotiating a monthly tenancy.[43] GMOFORIS's entire theory of agency rests upon representations allegedly made by the purported agent, but the agent alone cannot create the agency relationship by making representations to a third party. *See Amoroso v. Samuel Friedland Fam. Enters.,* 604 So.2d 827, 831 (Fla. 4th DCA 1992).

However, whether there was or was not a principal-agency relationship between SFCP and Mart Petroleum is irrelevant to the issue before the court.[44] Even if an agency relationship did exist, the fact remains that the Sublease is not the operative lease under which GMOFORIS occupied the Property prior to the filing of its bankruptcy petition.

Any argument by GMOFORIS that the Sublease survived rejection under 11 U.S.C. §365 fails because of the simultaneous rejection and termination of the Management Agreement between SFCP and Mart Petroleum, which effectively

---

[42] Transcript at 70:1-16.

[43] Although Stavros Moforis testified that he met with Mr. Hewatt's uncle, Robert Kilgore, there is no evidence that Mr. Kilgore was employed by SFCP; in fact, the business card provided by Mr. Kilgore to Mr. Moforis does not reflect that Mr. Kilgore was employed by SFCP, nor did the deposition testimony of Mr. Kilgore reflect that he was an employee of SFCP. *See* Pl. Exh. 11 and 21.

[44] Along those lines, GMOFORIS claims that SFCP was aware of, or consented to, GMOFORIS's possession of the Property in March of 2015. GMOFORIS failed to introduce any competent evidence that SFCP was aware of the Sublease. Transcript at 91:25-92:7. Rather, the testimony of Benjamin Smith and Clint Dixon, SFCP's employees, was that SFCP never saw the Sublease until June 2016, did not consent to the Sublease, and was not aware that GMOFORIS was in possession of the Property in 2015. Transcript at 110:23-111:1; 111:15-113:1. The evidence presented by GMOFORIS that it remitted a single payment for gasoline purchases directly to Miami Commercial does not alter that result. Even if SFCP did know or consent to GMOFORIS's possession dating back to March 2015, that does not support an "agency theory" and it does not change the fact that the Sublease was terminated pre-petition, as explained *supra*.

12

constituted the "master lease" of the Property. During its bankruptcy, Mart Petroleum not only rejected the Sublease, but also rejected the Management Agreement with SFCP and entered into the court-approved Settlement Agreement whereby Mart Petroleum specifically released any interest in the Property. As a result, any interest of Mart Petroleum in the Property was terminated as of the effective date of the Settlement Agreement. GMOFORIS appeared in the Mart Petroleum Bankruptcy Case and therefore received ample notice that both the Management Agreement and the Sublease were rejected and terminated by court order.

Normally, in a bankruptcy case involving a debtor-landlord, rejection of an unexpired lease under § 365 constitutes a breach of the lease, but it is not the same as terminating the lease. Rejection "does not embody the contract-vaporizing properties so commonly ascribed to it …. Rejection merely frees the estate from the obligation to perform; it does not make the contract disappear." *Thompkins v. Lil' Joe Records, Inc.,* 476 F.3d 1294, 1306 (11th Cir. 2007) (quoting *Cohen v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.*), 138 B.R. 687, 703 (Bankr. S.D.N.Y. 1992)). More specifically, "[r]ejection has absolutely no effect upon the contract's continued existence; the contract is not cancelled, repudiated, rescinded, or in any other fashion terminated." *In re Drexel Burnham*, 138 B.R. at 708 (internal quotation omitted); *see also Eastover Bank for Sav. v. Sowashee Venture (In re Austin Dev. Co.)*, 19 F.3d 1077, 1082 (5th Cir. 1994) (holding that rejection under § 365(g) "does not mean that the executory contract . . . has been terminated,

but only that a breach has been deemed to occur"). As a tenant under a lease that was rejected by its debtor-landlord, Mart Petroleum, GMOFORIS normally would have had the option to either treat the Sublease as terminated or retain its rights under the Sublease for the balance of its term. *See* 11 U.S.C. §365(h)(1).

However, the Sublease, and the rights of GMOFORIS as a subtenant under the Sublease, were subject to the existence of a valid lease of the property between SFCP and Mart Petroleum. When Mart Petroleum rejected the Management Agreement with SFCP in the Mart Petroleum Bankruptcy Case and entered into the Settlement Agreement by which the parties released each other from all claims, including any claims relating to the Property, the parties agreed (among other things) to terminate the Management Agreement. The termination of the Management Agreement as the "master lease" of the Property had the effect of terminating the Sublease, as a subordinate lease in the chain. *See In re 6177 Realty Associates, Inc.*, 142 B.R. 1017, 1019 (Bankr. S.D. Fla. 1992) ("Once the [master] lease is terminated, leasehold mortgagees and sublessees retain no interest that can be pursued in bankruptcy court or state court."); *Thal v. S.G.D. Corp.*, 625 So.2d 852, 853 (Fla. 3d DCA 1993).

After termination of the Sublease, the record reflects that GMOFORIS (a) negotiated with SFCP to enter into a new lease,[45] (b) executed the Worksheet but inserted additional terms that were not accepted by SFCP,[46] and (c) commenced

---

[45] Def. Exh. BBB at ¶¶5-6; Def. Exh. R; Transcript at 52:24-53:24.

[46] Def. Exh. BBB, at ¶7; Transcript at 64:15-24, 65:6-66:23.

communicating with and making rent payments to SFCP in the amount of the rent listed on the Worksheet.[47] By its actions, GMOFORIS acknowledged that the Sublease was terminated and thereafter entered into a new oral month to month lease with SFCP for the Property.

During closing arguments, counsel for GMOFORIS argued for the first time that the rejection of the Sublease by Mart Petroleum did not impair GMOFORIS's rights under the Sublease because SFCP, the purported principal, was not the entity in bankruptcy and *it* did not reject the Sublease. This argument is predicated on GMOFORIS's agency theory,[48] which the court has already rejected for the reasons set forth above.

Again, the actions of GMOFORIS plainly evidence its understanding that the Sublease had terminated and, that if GMOFORIS wanted to remain in possession of the Property, it needed to enter into a new agreement with SFCP. In fact, immediately after the court entered the order rejecting the Sublease in the Mart Petroleum Bankruptcy Case, GMOFORIS's counsel recognized in an email to SFCP's counsel that, as a result of rejection, SFCP "was no longer precluded from having business discussions [with GMOFORIS] concerning the future plans for [the Property] and [GMOFORIS]."[49] GMOFORIS plainly acted as if its possessory right in the Property was extinguished (or at least "in limbo") as a result of Mart Petroleum's Bankruptcy Case and that GMOFORIS needed a new lease with SFCP for the

---

[47] Def. Exh. CCC at ¶21; Transcript at 71:4-6, 167:6-22.

[48] Transcript at 183:3-10.

[49] Def. Exh. G.

Property in order to remain in possession for any amount of time. That is precisely why the parties negotiated the Worksheet, and entered into the oral month to month lease of the Property.

### B. The Operative Lease of the Property is an Oral Month to Month Lease.

In December 2016, Stavros Moforis flew to Georgia to meet with Clint Dixon to negotiate a month-to-month lease of the Property.[50] Mr. Dixon handwrote the rent amount and the "month to month" term on the C-Store Lease Worksheet, signed it, and gave the original document to Stavros Moforis.[51]  George Moforis thereafter signed the Worksheet, with certain amendments discussed below, and Stavros Moforis returned the Worksheet to Mr. Dixon by email.[52]

On signing, George Moforis handwrote various additions and requests. For example, GMOFORIS requested a monthly $2,000 Subway rent credit and a monthly $500 utility credit.[53] SFCP agreed to certain changes, but not necessarily all of GMOFORIS's modifications to the Worksheet.[54] Specifically, SFCP agreed to GMOFORIS's request for a monthly Subway credit[55] but it did not agree to a monthly $500 utility credit.[56] As a result, the counteroffer evidenced by the Worksheet did not result in an operative lease because there was no "meeting of the minds" as to all

---

[50] Transcript at 165:7-17.

[51] *Id.* at 166:1-6.

[52] *Id.* 166:9-14; Def. Exh. T.

[53] Def. Exh. T; Transcript at 171:7-11.

[54] Transcript at 153:7-10, 21-23.

[55] Def Exh. KK.

[56] *Id.*, 154:9-17; 171:22-172:4.

salient lease terms. *See Grant v. Lyons*, 17 So.3d 708, 710 (Fla. 4th DCA 2009); *Pena v. Fox*, 198 So.3d 61, 63 (Fla. 2d DCA 2015).

Although SFCP considered the Worksheet to be *the* lease, SFCP failed to fully accept all of GMFORIS's handwritten additions.[57] As a result, the Worksheet never become the operative lease between the parties. However, in certain respects, the parties acted consistently with certain of the terms set forth in the Worksheet.[58] For example, GMOFORIS repeatedly acknowledged that it had a month to month lease with SFCP.[59] GMOFORIS's email dated February 2, 2018 confirms that GMOFORIS was well-aware that it had a monthly tenancy:

> As I have mentioned, a long term Lease at the station is what I am hopeful for. **Something better than the 30 day Lease that is currently in place . . . .** [60]

GMOFORIS's attorney acknowledged that it was a "**month to month deal**".[61] GMOFORIS remitted monthly rental payments to SFCP from January 2017 through and until April 2018 in the amount reflected on the Worksheet, and received a $2,000 monthly credit for the sandwich shop rent listed on the Worksheet for the period of March 2017 through date of the Hearing.[62]

As a result, GMOFORIS and SFCP created an oral month to month lease of the Property. This oral lease was based upon the written notes of their negotiations

---

[57] Transcript at 153:2-154:11, 172:2-4.

[58] Transcript at 153:7-10, 171:22-23.

[59] Def. Exh. HH; Def. Exh. BBB at ¶10; Transcript at 73:22-74:4, 168:3-7.

[60] Transcript at 73:5-74:4; Def. Exh. HH (emphasis supplied).

[61] Def. Exh. R (bold in original); Transcript at 75:2-5, 76:2-10.

[62] Def. Exh. KK, Transcript at 135:22-136:14, 154:12-25.

set forth on the Worksheet, their actual conduct in the payment and acceptance of rent and rent credits, and their emails confirming the existence of a month to month occupancy. Fla. Stat. § 83.01; *See Hasty v. Chain (In re Hasty)*, 25 B.R. 429, 430 (Bankr. M.D. Fla. 1982). This result is consistent with applicable non-bankruptcy law that permits parties to create a valid oral lease, which is construed to be a month to month tenancy if rent is remitted monthly. Fla. Stat. § 83.01.

### C. The Oral Lease was Terminated Pre-Petition.

As a matter of applicable state law, either party may terminate a monthly tenancy by giving not less than 15 days' notice prior to the end of any monthly period. Fla. Stat. § 83.03. No cause or justification is necessary or required to terminate an at will tenancy. *Ralo, Inc. v. Jack Graham, Inc.* 362 So.2d 310, 311 (Fla. 2d DCA 1978) ("A landlord is entitled to terminate a tenancy at will upon proper notice without having to justify his action through the showing of appropriate cause.").

In the Eviction Action, GMOFORIS asserted two affirmative defenses.[63] The affirmative defenses are vague and legally deficient since they do not give "fair notice" of the grounds upon which they rest. *See* Fed. R. Civ. Pro. 8; *Aidone v. Nationwide Auto Guard, LLC,* 295 F.R.D. 658, 660 (S.D. Fla. 2013). It appears (but is not clear) that GMOFORIS is attempting to assert an unspecified issue with the Notice. GMOFORIS's closing argument on this point is equally vague.[64] Even if the defenses

---

[63] ECF No. 6-6 in Adv. 18-01380.

[64] Transcript at 185:21-25; 192:5-15.

were properly alleged or preserved, SFCP has satisfied its burden and there is no issue with the Notice.

GMOFORIS last paid pre-petition rent to SFCP on April 30, 2018, rendering the expiration of the monthly term May 29, 2018. The Notice, which was sent by hand delivery on May 18, 2018, provided GMOFORIS with fifteen days to vacate *and* the right to finish out the remainder of the May term.[65] The Notice allowed GMOFORIS to remain in possession *past* the expiration of the term - to June 2, 2018. Applicable state law confirms that fifteen days is sufficient statutory notice to terminate an at will monthly tenancy.

*Sill v. Smith,* 177 So.2d 265 (Fla. 2d DCA 1965), is instructive. *Sill* involved an action by a landlord for rent claimed owed to it under a lease, as well as the tenant's counterclaim to recover pre-paid rent for the last month after the tenant terminated the tenancy. Crucial to the parties' claims was whether the tenant properly terminated the monthly lease. The tenant paid rent on the 11th of each month. The tenant's last monthly payment was made on December 11, such that the end of that term was January 10. On December 12, the tenant gave notice that it was terminating the tenancy and vacating the property prior to January 1 (i.e., prior to the expiration of the term). The parties thereafter asserted competing claims for the

---

[65] The Notice incorrectly cites to the residential landlord-tenant statute (Fla. Stat. §83.57), as opposed to its commercial counterpart (Fla. Stat. §83.03), which are identical in all respects. This is a minor scrivener's error that does not impact the validity of the Notice. *Herrmann v. Dist. Bd. of Trustees of Santa Fe College*, 120 So.3d 626 (Fla. 1st DCA 2013) (finding a letter substantially complied with the statutory requirements even though it cited to the wrong statute); *McMann v. State*, 954 So.2d 90 (Fla. 1st DCA 2007).

rent monies owed for the final month of the tenancy. The court in *Sill* determined that the tenant properly terminated its monthly lease pursuant to Fla. Stat. §83.03, when it gave notice on December 12 that it was vacating prior to January 1. *Sill,* 177 So.2d at 267. The termination was deemed valid, notwithstanding that the termination date was *prior* to the expiration of (and in the *middle* of) the then-existing term. *Id*. at 266.

The holding in *Sill* demonstrates that, under Florida law, a termination notice issued under Fla. Stat. §83.03 of an oral month to month lease is valid if it provides at least 15 days' prior notice of termination, even if the termination date does not coincide directly with the end of the term of the monthly tenancy.

As a result, the court concludes that SFCP properly terminated the oral month to month lease of the Property in accordance with applicable state law.

## IV.    **CONCLUSION**

Because the court concludes that the operative lease, pre-petition, was an oral month to month lease, and that the oral month to month lease was properly terminated pre-petition, GMOFORIS did not have an unexpired lease for the Property as of the Petition Date that could be assumed or rejected under 11 U.S.C. §365. Based on this conclusion, the court further concludes that SFCP is entitled to a judgment for possession of the Property as a matter of applicable state law.

Based on the foregoing, it is hereby **ORDERED** and **ADJUDGED** as follows:

1.    Pre-petition, GMOFORIS entered into an oral month to month lease of the Property with SFCP.

2.      SFCP properly terminated the oral month to month lease it had with GMOFORIS pursuant to the Notice, effective June 2, 2018.

3.      As of the Petition Date, GMOFORIS did not have an unexpired lease for the Property which it could assume or reject pursuant to 11 U.S.C. §365; accordingly, GMOFORIS is a holdover tenant under applicable state law.

4.      SFCP is entitled to a judgment for possession of the Property as a matter of applicable state law.

5.      GMOFORIS must vacate the Property within fifteen days from the date of entry of this order.

6.      If GMOFORIS fails to vacate the Property within fifteen days from the date of entry of this order, SFCP is granted relief from the automatic stay to obtain an expedited writ of possession from the State Court, without prejudice to any contempt remedy otherwise available to SFCP in this court.

###

Copies to:

Larry I. Glick, Esq.
SHUTTS & BOWEN LLP
200 South Biscayne Boulevard, Suite 4100
Miami, FL  33131
Phone:  305-358-6300
lglick@shutts.com
*Counsel for Defendant*

*Attorney Glick shall serve a copy of this Order on all interested parties and file a Certificate of Service.*